**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**MARILYN FIGUEROA,**

                    Plaintiff,          **05 Civ. 9594 (JGK)**

      - against –            **MEMORANDUM OPINION**
                                          **AND ORDER**

**CITY OF NEW YORK and NEW YORK CITY**
**DEPARTMENT OF SANITATION,**

                    Defendants.
────────────────────────────────────────


**JOHN G. KOELTL, District Judge:**

      The defendants move to enforce a settlement reached by the
parties during settlement negotiations with the plaintiff's
former attorney, Linda Cronin.  The plaintiff, who now appears
pro se, objects to enforcement of the agreement on the grounds
that (1) she was allgedely induced to enter into it under
conditions constituting economic duress; (2) she did not validly
confer authority on Ms. Cronin to settle the lawsuit, because
Ms. Cronin concealed key terms of the settlement agreement from
her; and (3) the agreement was not committed to writing or
stipulated to in open court.

**I.**

The plaintiff, Marilyn Figueroa, brings this action
pursuant to Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000, et seq. ("Title VII"), the Americans
with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and
the New York City Human Rights Law, New York City Administrative
Code § 8-101, et seq. (the "NYCHRL"), alleging that the
defendants discriminated against her on the basis of her gender
and disabilities (high-risk pregnancy, anemia, and
hemorrhaging).  The plaintiff alleges that the defendants failed
to accommodate her disabilities, and that they harassed and
retaliated against her.

At a hearing on January 30, 2009, the Court dismissed with
prejudice the plaintiff's gender discrimination claims under
Title VII and the NYCHRL.  Hr'g Tr. 19:8-9, 24:21-23, Jan. 30,
2009.  It also dismissed with prejudice the plaintiff's claim
pursuant to the ADA, on the ground that she had failed to allege
the existence of a disability covered by the ADA.  Tr. 29:9-12.
The Court held that questions of fact remained as to whether the
plaintiff's medical conditions were disabilities under the
NYCHRL and whether she had received a reasonable accommodation.
Tr. 30:24-31:3, 31:22-24.  The Court also denied the defendants'

motion for summary judgment on the Title VII and NYCHRL retaliation claims.  Tr. 27:21-23.  Finally, the Court held that the plaintiff's allegations concerning events occurring after the filing of her second amended complaint, in November 2007, were not at issue in this case.  Tr. 21:23-22:1.

By order dated January 30, 2009, the Court referred this case to Magistrate Judge Freeman for purposes of settlement. Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. Jan. 30, 2009) (order of reference to a magistrate judge).  In April 2009, counsel for the parties informed the Court that a settlement had been reached.  On April 27, 2009, however, the plaintiff sent a letter to the Court, indicating that she believed the settlement was unreasonable and unfair.  Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. April 27, 2009) (order forwarding the plaintiff's letter to counsel for the parties).  The defendants did not seek to enforce the alleged settlement agreement.  By order dated May 29, 2009, the Court granted the motion to withdraw by David Fish, the plaintiff's attorney at that time.  Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. May 29, 2009) (order granting motion to withdraw).

On June 26, 2009, Linda Cronin, the plaintiff's attorney during the events relevant to this motion, filed a notice of

appearance.  Notice of Appearance, Figueroa v. City of New York,
No. 05 Civ. 9594 (S.D.N.Y. June 26, 2009), ECF No. 54.  By order
dated December 3, 2009, the Court again referred this matter to
Magistrate Judge Freeman for purposes of settlement.  Figueroa
v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. Dec. 3, 2009)
(order of reference to a magistrate judge).  Magistrate Judge
Freeman conducted several settlement conferences, at which the
plaintiff was represented by Ms. Cronin.

     By letter dated July 2, 2010, the defendants requested
leave to withdraw without prejudice their pending motion in
limine, and the parties jointly requested until July 23, 2010,
to conclude their settlement discussions.  The Court granted the
application on July 6, 2010.  Declaration of Eamonn Foley in
Support of Defendants' Motion to Enforce Settlement Agreement
("Foley Decl.") Exh. B, Figueroa v. City of New York, No. 05
Civ. 9594 (S.D.N.Y. August 20, 2010).

     According to the defendants, between July 2 and July 23,
2010, the parties negotiated and ultimately arrived at a
settlement.  Foley Decl. ¶ 22.  On July 22 and 23, 2010, counsel
for the parties discussed and confirmed in writing the basic
terms of the settlement agreement, including (1) the money to be
paid by the defendants to the plaintiff, (2) the manner and
timing of the plaintiff's departure from employment by the

- 4 -

defendants, (3) a release of claims in favor of the City and a withdrawal of the plaintiff's pending claims, complaints, and challenges, (4) that the plaintiff would execute the usual settlement paperwork, including a general release and affidavit of no liens, and (5) that the plaintiff would remain on sick leave pending the determination of her pending disability retirement application. Foley Decl. ¶¶ 23-24 & Exhs. C, D. The plaintiff gave her consent to Ms. Cronin to accept the settlement on her behalf. Unofficial transcript of telephone call between the plaintiff and Ms. Cronin ("Tr.") at 14, attached as Exhibit A to Opposition to Motion to Enforce Settlement, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. November 29, 2010).

The defendants' counsel, with Ms. Cronin's consent, advised the Court that the parties had settled the case and were preparing settlement papers setting out the terms of the agreement. Foley Decl. ¶ 25 & Exh. E. The parties requested a hearing at which the plaintiff would confirm her understanding of an agreement to the terms of the settlement.

Between July 28 and July 30, 2010, counsel for the parties spoke by telephone several times and exchanged four drafts of the settlement documents. Foley Decl. ¶¶ 27-31 & Exhs. F-I.

The settlement papers were finalized.  Foley Decl. ¶ 32 &
Exh. J.

On July 30, 2010, the defendants' counsel wrote, with Ms.
Cronin's consent, to inform the Court that the plaintiff had
changed her mind, and did not wish to enter into the settlement
agreement.  Foley Decl. ¶ 33; Letter from Eamonn Foley, Figueroa
v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. July 30, 2010),
ECF No. 78.  At a conference on August 3, 2010, Ms. Cronin
confirmed that the parties had agreed to settle the action on
July 23, 2010, and that the terms of the agreement to which the
plaintiff had agreed were reflected in the settlement papers
submitted to the Court.  Foley Decl. ¶ 34 & Exh. K at 3-4.
During a telephone conference on August 6, 2010, Ms. Cronin
again stated that the plaintiff had agreed to the settlement
agreement, and that the plaintiff had agreed to the terms
reflected in the settlement documents.  Foley Decl. ¶ 37 & Exh.
L at 4-5.

On August 24, 2010, Ms. Cronin filed a motion to withdraw
as the plaintiff's attorney, on the ground that she believed the
plaintiff had entered into a binding settlement agreement, and
that Ms. Cronin could not in good conscience argue otherwise, as
the plaintiff asked her to do.  Memorandum of Law in Support of
Motion for Linda M. Cronin (Cronin & Byczek) to Withdraw as

- 6 -

Attorney of Record, <u>Figueroa v. City of New York</u>, No. 05 Civ.
9594 (S.D.N.Y. August 24, 2010).  By order dated October 20,
2010, the Court granted Ms. Cronin's motion to withdraw.
<u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Oct.
20, 2010) (order granting motion to withdraw).

## II.

Parties can enter into binding oral agreements.  <u>Winston v.
Mediafare</u>,  777 F.2d 78, 80 (2d Cir. 1985).  Where the parties
intend to be bound, an oral settlement of a litigation is
binding even if a party later changes his or her mind.  <u>See</u>
<u>Powell v. Omnicom</u>, 497 F.3d 124, 129-30 (2d Cir. 2007).

To determine whether the parties intended to be bound in
the absence of a document executed by both sides, the Court
should consider "(1) whether there has been an express
reservation of the right not to be bound in the absence of a
writing; (2) whether there has been partial performance of the
contract; (3) whether all of the terms of the alleged contract
have been agreed upon; and (4) whether the agreement at issue is
the type of contract that is usually committed to writing."
<u>Winston</u>, 777 F.2d at 80.

- 7 -

In this case, there is no dispute that the parties intended to be bound prior to executing a written agreement.  The plaintiff does not dispute that she authorized Ms. Cronin to settle the suit on her behalf.  Nor does she dispute the defendants' contention that Ms. Cronin and the defendants thereafter entered into an oral settlement agreement.  Instead, she argues that the settlement agreement is not binding because (1) she was induced to enter into it under conditions constituting economic duress; (2) she did not validly confer authority on Ms. Cronin to settle the suit, because Ms. Cronin concealed key terms of the settlement agreement from her; and (3) the agreement did not comply with a New York state procedural rule requiring settlement agreements to be committed to writing or made in open court.  None of these arguments has merit.

**A.**

In order to avoid the enforcement of an agreement on the basis of "economic duress," a party must demonstrate that a wrongful threat precluded the exercise of her free will and caused her involuntarily to accept the terms of the agreement. Specifically, the party "must show: (1) a threat, (2) unlawfully

made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative." Raghavendra v. Trs. Of Columbia Uni., 686 F. Supp. 2d 332, 342 (S.D.N.Y. 2009) (internal quotation marks omitted) (collecting cases); see also Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir. 1989); Mathias v. Jacobs, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001). Notably, "dissatisfaction or disagreement with counsel during settlement negotiations does not constitute duress." Id. at 344 (rejecting claim of duress where plaintiff was "brow-beaten" and "shouted down" during negotiations).

It is plain that the plaintiff's allegations of mistreatment by Ms. Cronin do not rise to the level of duress. The plaintiff alleges only that Ms. Cronin was "hostil[e]," "impatien[t]," and "condescend[ing]." Opposition to Motion to Enforce Settlement at 2, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. November 29, 2010) ("Br."). These circumstances do not constitute the type of "unlawful threat" necessary to support a claim of duress, and are not a basis for refusing to enforce the settlement agreement.

The plaintiff has submitted a transcript of two telephone calls with Ms. Cronin that the plaintiff apparently surreptitiously recorded. The transcripts do not reflect duress, but rather an effort by Ms. Cronin to obtain a clear and

unequivocal decision from the plaintiff that the plaintiff was in fact agreeing to the settlement.  The plaintiff did in fact agree without duress.  <u>See</u> Tr. at 14.

**B.**

The plaintiff's second argument, that the settlement agreement should not be enforced because she did not validly confer authority on Ms. Cronin to settle the suit, is also unavailing.  The plaintiff alleges that Ms. Cronin procured her consent to the settlement by concealing key terms of the settlement from her.  Br. at 4.

This argument fails because, notwithstanding the plaintiff's alleged ignorance of certain terms of the agreement, she explicitly authorized Ms. Cronin to enter into the settlement agreement.  The relationship between a lawyer and client is one of agent and principal.  <u>United States v. International Bhd. of Teamsters</u>, 986 F.2d 15, 20 (2d Cir. 1993). The decision to settle a case rests with the client, and a client does not automatically bestow the authority to settle a case on retained counsel.  <u>Fennell v. TLB Kent Co.</u>, 865 F.2d 498, 501-02 (2d Cir. 1989).  Nonetheless, an attorney's actual authority "may be inferred from words or conduct which the

principal has reason to know indicates to the agent that he is to do the act." International Bhd., 986 F.2d at 20.  Here, the plaintiff explicitly agreed to settle the case without seeing a written copy of the settlement agreement.  See Tr. at 14.  Ms. Cronin did review the critical terms with the plaintiff, including the amount of money the plaintiff would receive, Tr. at 2, Ms. Cronin's fees, Tr. at 2, future litigation over the plaintiff's pension, Tr. at 3, the plaintiff's disability benefits, Tr. at 7-8, and the legal effect of the settlement agreement, Tr. at 10.  The plaintiff then explicitly gave her attorney the authority to agree to the settlement.  Tr. at 14.

Moreover, it is clear that the agreement is also enforceable because Ms. Cronin had apparent authority to enter into the agreement.  "The doctrine of apparent authority comes into play when a party . . . reasonably believes that another party . . . has delegated authority to enter into an agreement on its behalf to an agent."  Trustees of UIU Health & Welfare Fund v. New York Flame Proofing Co., 828 F.2d 79, 83-84 (2d Cir. 1987).

In this case, the parties were referred to the magistrate judge for settlement purposes.  Pursuant to that reference, the magistrate judge conducted a number of settlement conferences, at which the plaintiff authorized Ms. Cronin to appear on her

behalf.  Ultimately, Ms. Cronin agreed to the settlement after she informed the plaintiff that Ms. Cronin needed to respond to the defendants' attorney.  See Tr. at 8, 14; see also Foley Decl. Exh. K at 5-6.  Accordingly, Ms. Cronin also had apparent authority to settle the suit on the plaintiff's behalf.

## C.

Finally, the plaintiff contends that the settlement agreement is not enforceable because it was not committed to writing or made in open court.  For this proposition, the plaintiff relies on the New York state court rule that a settlement agreement is generally valid "only if both parties stipulate to the settlement in a written agreement or it is made in open court and placed on the record."  Diarassouba v. Urban, 892 N.Y.S.2d 410, 413 (App. Div. 2009); see also N.Y. C.P.L.R. § 2104.

The requirement that a settlement agreement either be reduced to writing or stipulated to in open court does not apply to this case, however.  Where an action is based on federal law (here, Title VII), an attorney's authority to settle the action is a federal question, and hence federal law applies.  Foster v. City of New York, 96 Civ. 9271, 2000 WL 145927, at *3 (S.D.N.Y.

Feb. 7, 2000) (citing <u>Fennell v. TLB Kent. Co.</u>, 865 F.2d 498, 501 (2d Cir. 1989); <u>In re Artha Mgmt. Inc.</u>, 91 F.3d 326, 329 (2d Cir. 1996)).  "Under common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract."  <u>Id.</u> (citing <u>Winston</u>, 777 F.2d at 80-83).  As a result, the United States district courts within the state of New York have repeatedly enforced oral settlement agreements such as this one.  <u>See, e.g.</u>, <u>Kaczmarczyk v. Acme Contr. LLC</u>, No. 06 Civ. 1005, 2009 WL 3739442, at *8 (E.D.N.Y. Nov. 3, 2009); <u>Delyanis v. Dyna-Empire, Inc.</u>, 465 F. Supp. 2d 170, 176 (E.D.N.Y. 2006); <u>Conway v. Brooklyn Union Gas Co.</u>, 236 F. Supp. 2d 241, 253 (E.D.N.Y. 2002); <u>Kilcullen v. Metro North Commuter R.R. Co.</u>, No. 95 Civ. 6331, 1998 WL 647171, at *7 (S.D.N.Y. Sept. 22, 1998); <u>Hartford Fire Ins. Co. v. SS "An Chun"</u>, No. 96 Civ. 7738, 1997 WL 790578, at *2 (S.D.N.Y. Dec. 23, 1997).  The plaintiff does not dispute the defendants' contention that the parties entered into an oral settlement agreement; she merely argues that this settlement agreement was unenforceable because it did not comply with the formalities of New York state law.  Under the federal rule, however, an oral agreement to settle may be enforced to the same extent as a written one.

- 13 -

## CONCLUSION

For the reasons discussed above, the defendants' motion to enforce the settlement agreement is **granted**.  The defendant should submit a proposed judgment consistent with this opinion by **February 7, 2011**.  The plaintiff can submit any counter-judgment by **February 14, 2011**.  The Clerk is directed to close **Docket No. 83.**

SO ORDERED.

Dated: New York, New York
       January 31, 2011

                                    John G. Koeltl
                               United States District Judge