**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────
**MARILYN FIGUEROA,**

              Plaintiff,         **05 Civ. 9594 (JGK)**

     - against –                 **MEMORANDUM OPINION**
                                                      **AND ORDER**
**CITY OF NEW YORK and NEW YORK CITY**
**DEPARTMENT OF SANITATION,**

              Defendants.
────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    Cronin & Byczek, LLP ("C&B"), former counsel for the plaintiff, has moved for an order directing Defendant City of New York to release $70,745.29 currently held in escrow pursuant to the Court's order dated March 16, 2011, to C&B, in satisfaction of a charging lien arising in favor of C&B by operation of New York Judiciary Law § 475 ("Section 475").

I.

    As set forth in greater detail in the Court's decision dated January 31, 2011, this dispute arises out of an action brought by the plaintiff, Marilyn Figueroa, against the City of New York and the New York City Department of Sanitation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000, et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the New York City Human Rights Law, New York City Administrative Code § 8-101, et seq. (the "NYCHRL").  The plaintiff alleged that the defendants discriminated against her on the basis of her gender and various disabilities; failed to accommodate her disabilities; and harassed her and retaliated against her.  On January 30, 2009, the Court dismissed the plaintiff's gender discrimination claims under Title VII and the NYCHRL, as well as her claims under the ADA, but denied the defendants' motion for summary judgment with respect to the remaining claims.

    The case was referred to Magistrate Judge Freeman for settlement in January 2009.  Order, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Jan. 30, 2009) (order of reference to a magistrate judge).  In April 2009, counsel for the parties informed the Court that a settlement had been reached.  On April 27, 2009, however, the plaintiff sent a letter to the Court, indicating that she believed the settlement was unreasonable and unfair.  Order, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. April 27, 2009).  The defendants did not seek to enforce the alleged settlement agreement.  By order dated May 29, 2009, the Court granted the motion to withdraw by David Fish, the plaintiff's attorney at

that time.  Order, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. May 29, 2009).

On June 26, 2009, Linda Cronin, the plaintiff's attorney during the events relevant to this motion, filed a notice of appearance.  Notice of Appearance, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. June 26, 2009), ECF No. 54.  By order dated December 3, 2009, the Court again referred this matter to Magistrate Judge Freeman for purposes of settlement.  Order, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. Dec. 3, 2009).  Magistrate Judge Freeman conducted several settlement conferences, at which the plaintiff was represented by Ms. Cronin.

On July 23, 2010, the defendants advised the Court by letter, with plaintiff's counsel's consent, that the parties had agreed in principle to the terms of a settlement of the case. The parties jointly requested a hearing so that the plaintiff's approval of the agreement could be confirmed on the record in light of her previous repudiation of a settlement agreement. Pl. Opp. to Movant's Charging Lien Ex. A, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. April 27, 2011) ("Opp."). On July 30, 2010, however, the defendants' counsel wrote, with Ms. Cronin's consent, to inform the Court that the plaintiff had changed her mind, and did not wish to enter into the settlement

- 3 -

agreement.  Letter from Eamonn Foley, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. July 30, 2010), ECF No. 78.

On August 24, 2010, Ms. Cronin filed a motion to withdraw as the plaintiff's attorney, on the ground that she believed the plaintiff had entered into a binding settlement agreement, and that she could not in good conscience argue otherwise, as the plaintiff asked her to do.  Contemporaneously, the defendants filed a motion to enforce the settlement agreement.

By order dated October 20, 2010, the Court granted Ms. Cronin's motion to withdraw, on the grounds that (1) Ms. Cronin could not, consistently with the New York Rules of Professional Conduct, pursue a position she believed was factually inaccurate, and (2) her testimony in an evidentiary hearing on the motion to confirm the settlement agreement would be both necessary and substantially likely to be prejudicial to the plaintiff.  Order, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Oct. 20, 2010).

On January 31, 2011, the Court issued a memorandum opinion and order granting the defendants' motion to enforce the settlement agreement.  Memorandum Opinion and Order at 14, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Jan. 31, 2011) ("Mem. Op.").  It found, among other things, that the plaintiff had validly conferred authority on Ms. Cronin to enter

into the settlement agreement.  Mem. Op. at 11.  On March 17, 2011, the Court entered judgment in the case in favor of the plaintiff, pursuant to the settlement agreement, and directed the defendants to hold $70,745.29, representing approximately one-third of the settlement proceeds, in escrow pending resolution of the fee dispute between the plaintiff and C&B. Judgment, Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. Mar. 17, 2011).

C&B has now moved for release of the funds pursuant to a statutory charging lien arising under New York law.

**II.**

New York Judiciary Law § 475 ("Section 475") governs attorneys' charging liens in federal courts sitting in New York. Itar-Tass Russian News Agency, 140 F.3d 442, 448 (2d Cir. 1998). It provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after

> judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475 (McKinney's 1997). The charging lien is a lien against any judgment or settlement in favor of the client in an action in which the attorney represented the client. Itar-Tass, 140 F.3d at 449. The lien created by Section 475 is enforceable in federal courts in accordance with its interpretation by New York courts. Id. The New York Court of Appeals has stated that the "statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." Fischer-Hansen v. Brooklyn Heights R. Co., 66 N.E. 395, 397 (N.Y. 1903).

An attorney who terminates his or her representation for good cause is entitled to enforce a charging lien under Section 475. See Itar-Tass, 140 F.3d at 451-52 (citing Klein v. Eubank, 663 N.E.2d 599 (N.Y. 1996)). In this case, the Court permitted Ms. Cronin to withdraw upon a finding that her continued representation of her client would constitute a violation of the New York Rules of Professional Conduct. This constitutes good cause, and accordingly C&B is not barred from enforcing a

charging lien under Section 475 by virtue of Ms. Cronin's withdrawal.

The plaintiff purports to oppose the motion for a charging lien on essentially three grounds: (1) that Ms. Cronin fraudulently induced the plaintiff into agreeing to the settlement by falsely representing that the plaintiff's treating physicians could not be compelled to testify; (2) that Ms. Cronin fraudulently induced the plaintiff into agreeing to the settlement by concealing a term of the settlement that permanently barred her from working for the City of New York; and (3) that the oral settlement agreement was not enforceable. Notably, the plaintiff does not dispute that, if the settlement agreement is enforceable, C&B is entitled to a charging lien on the proceeds of the settlement. With the exception of the two allegations of fraudulent inducement, the plaintiff's arguments were fully considered by the Court in deciding the motion to enforce the settlement agreement, and were rejected by the Court in its January 31, 2011 decision. The plaintiff may not reargue the merits of the motion to enforce the settlement agreement under the guise of opposing a motion for a charging lien.

Relatedly, the plaintiff's arguments as to fraudulent inducement go to the validity of the settlement agreement, and not to the validity of the charging lien. Accordingly, they

- 7 -

should have been raised, if at all, in the context of her opposition to the motion to enforce the settlement agreement. Because they were not raised, the arguments are waived. Moreover, they are without merit.  The plaintiff argues that Ms. Cronin fraudulently induced her into agreeing to settle by falsely representing that the plaintiff's physicians could not be compelled to testify.  None of the documents support that contention.  A purported transcript of a phone call between Ms. Cronin and the plaintiff, submitted by the plaintiff, makes clear that the plaintiff was informed that her doctors refused to testify.  Opp. Ex. C at 4.  Fairly read, the transcript indicates that the doctors did not want to testify, and that it would have been unwise to attempt to compel them to testify, in light of their opposition.

    The plaintiff also argues that Ms. Cronin fraudulently induced her into agreeing to settle by concealing a term of the settlement that permanently barred her from working for the City of New York.  This argument is also unsupported.  As revealed by the transcript submitted by the plaintiff, the plaintiff and Ms. Cronin discussed the subject of the plaintiff's future employment at length.  While Ms. Cronin did not inform the plaintiff, during the course of that particular call, that she would be barred from future employment by the city, the

transcript does indicate that the plaintiff repeatedly emphasized that she did not wish to work at all in the future, and that if she did work, she would seek employment close to her home in Poughquag.  Opp. Ex. C at 6-9; Reply Aff. at ¶ 15.  In light of the plaintiff's statements, it cannot be argued that she entered into the settlement agreement because she had been deceived into thinking she would be able to work for the city in the future.

Accordingly, the plaintiff's arguments in opposition to C&B's motion for a charging lien are without merit, and the motion will be granted.

**III.**

The only remaining issue is the proper amount of the charging lien.

Where the amount of a charging lien has been fixed by agreement, execution is appropriate on the judgment for the amount agreed to by the parties, Itar-Tass, 140 F.3d at 453, subject to the limitation that, because a charging lien is an equitable remedy, the amount of the lien must be "fair," Sutton v. N.Y. City Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006).  In considering whether the amount of a charging lien is fair, a

- 9 -

court looks to "the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved and amounts customarily charged for similar services in the same locality." Id. (internal quotation marks omitted).

   Under the circumstances of this case, it would appear that the requested amount of the charging lien, $70,745.29, is fair. The retainer agreement between the plaintiff and C&B provides for a one-third contingency fee against which an initial retainer of $10,000 is credited.  Linda M. Cronin, Aff. in Support of Motion for Charging Lien Ex. A at 1, Figueroa v. City of New York, 05 Civ. 9594 (S.D.N.Y. Mar. 22, 2011) ("Cronin Decl.").  C&B has submitted billing records that demonstrate that Ms. Cronin expended substantial time on the case and indicate that, had the plaintiff been billed on an hourly basis, she would have been charged in excess of the amount sought pursuant to the present motion.  Both the hours and the rate (generally $275 for Ms. Cronin's time) that were used to calculate the fees, if billed at an hourly rate, are reasonable. Moreover, the results obtained by Ms. Cronin appear to constitute a vast improvement over the defendants' previous settlement offer, which was $35,000, according to the transcript submitted by the plaintiff.  Opp. Ex. C at 7.

However, it is unclear how the amount of $70,745.29 has been calculated. The retainer agreement provided that the initial $10,000 retainer would be credited against the one-third contingency fee. See Cronin Decl. Ex. A at 1. The one-third fee would be $70,000 less the $10,000, or $60,000. It is unclear what the basis for the $745.29 is. It is also unclear how costs are being calculated or sought. Accordingly, before the amount of the lien is fixed or any funds are released from escrow by the defendants, C&B should submit an affidavit providing an explanation for the amount of the lien sought and the treatment of the plaintiff's retainer.

## CONCLUSION

For the reasons discussed above, C&B's motion for a charging lien is **granted**. C&B should submit an affidavit as described above by **August 10, 2011**, and the plaintiff may submit an affidavit in response by **August 17, 2011**. The Clerk is directed to close **Docket No. 117**.

SO ORDERED.

Dated: New York, New York
August 3, 2011

_____
John G. Koeltl
United States District Judge