UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

MARILYN FIGUEROA,

                          Plaintiff,                    05 Civ. 9594 (JGK)

            - against –                                 MEMORANDUM OPINION
                                                        AND ORDER
CITY OF NEW YORK and NEW YORK CITY
DEPARTMENT OF SANITATION,

                          Defendants.
————————————————————————————————

JOHN G. KOELTL, District Judge:

     On August 3, 2011, the Court granted the motion of Cronin &
Byczek, LLP ("C&B"), former counsel for the plaintiff, for a
charging lien.  The Court directed the parties to submit
affidavits providing an explanation for the amount of the lien
sought and the treatment of the plaintiff's retainer.  After
reviewing the affidavits submitted, the Court concludes that the
charging lien should be granted in the amount of $60,745.29.


                              I.


     As set forth in greater detail in the Court's decision
dated January 31, 2011, this dispute arises out of an action
brought by the plaintiff, Marilyn Figueroa, against the City of
New York and the New York City Department of Sanitation pursuant

                              - 1 -

to Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. § 2000e, et seq. ("Title VII"), the Americans with
Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the
New York City Human Rights Law, New York City Administrative
Code § 8-101, et seq. (the "NYCHRL").  The plaintiff alleged
that the defendants discriminated against her on the basis of
her gender and various disabilities; failed to accommodate her
disabilities; and harassed her and retaliated against her.  On
January 30, 2009, the Court dismissed the plaintiff's gender
discrimination claims under Title VII and the NYCHRL, as well as
her claims under the ADA, but denied the defendants' motion for
summary judgment with respect to the remaining claims.

On June 26, 2009, Linda Cronin, the plaintiff's attorney
during the events relevant to this motion, filed a notice of
appearance, replacing the plaintiff's prior counsel.  Notice of
Appearance, Figueroa v. City of New York, No. 05 Civ. 9594
(S.D.N.Y. June 26, 2009), ECF No. 54.

On July 23, 2010, the defendants advised the Court by
letter, with plaintiff's counsel's consent, that the parties had
agreed in principle to the terms of a settlement of the case.
On July 30, 2010, however, the defendants' counsel wrote, with
Ms. Cronin's consent, to inform the Court that the plaintiff had
changed her mind, and did not wish to enter into the settlement

agreement.  Letter from Eamonn Foley, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. July 30, 2010), ECF No. 78.

On August 24, 2010, Ms. Cronin filed a motion to withdraw as the plaintiff's attorney, on the ground that she believed the plaintiff had entered into a binding settlement agreement, and that she could not in good conscience argue otherwise, as the plaintiff asked her to do.  Contemporaneously, the defendants filed a motion to enforce the settlement agreement.

On October 20, 2010, the Court granted Ms. Cronin's motion to withdraw, on the grounds that (1) Ms. Cronin could not, consistently with the New York Rules of Professional Conduct, pursue a position she believed was factually inaccurate, and (2) her testimony in an evidentiary hearing on the motion to confirm the settlement agreement would be both necessary and substantially likely to be prejudicial to the plaintiff. Memorandum Opinion and Order, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Oct. 20, 2010).

On January 31, 2011, the Court issued a memorandum opinion and order granting the defendants' motion to enforce the settlement agreement.  Memorandum Opinion and Order, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Jan. 31, 2011).  It found, among other things, that the plaintiff had validly conferred authority on Ms. Cronin to enter into the settlement

agreement.  Id. at 11-12.  On March 17, 2011, the Court entered
judgment in the case in favor of the plaintiff, pursuant to the
settlement agreement, and directed the defendants to hold
$70,745.29, representing approximately one-third of the
settlement proceeds, in escrow pending resolution of the fee
dispute between the plaintiff and C&B.  Judgment, Figueroa v.
City of New York, No. 05 Civ. 9594 (S.D.N.Y. Mar. 17, 2011).

On March 22, 2011, C&B moved for release of the funds
pursuant to a statutory charging lien arising under New York
law.  On August 3, 2011, the Court issued a memorandum opinion
and order granting C&B's motion.  Memorandum Opinion and Order,
Figueroa v. City of New York, No. 05 Civ. 9594 (S.D.N.Y. Aug. 3,
2011).  The Court found that Ms. Cronin terminated her
representation of Ms. Figueroa for good cause and that C&B was
therefore not barred from enforcing a charging lien under New
York Judiciary Law § 475 ("Section 475").  Id. at 6-7.  The
Court also rejected the plaintiff's arguments that Ms. Cronin
had fraudulently induced the plaintiff into agreeing to the
settlement and that the oral settlement agreement was not
enforceable.  Id. at 7-9.  The Court thus granted C&B's motion
for a charging lien but directed the parties to submit
affidavits explaining the amount of the lien sought and the
treatment of the plaintiff's retainer.  Id. at 11.  Both parties

- 4 -

submitted the requested affidavits shortly thereafter.  (Linda
M. Cronin, Aff. in Support of Motion for Charging Lien, <u>Figueroa
v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y. Aug. 11, 2011)
("Cronin Aff.")); Marilyn C. Figueroa, Aff. in Opp. to Charging
Lien, <u>Figueroa v. City of New York</u>, No. 05 Civ. 9594 (S.D.N.Y.
Sept. 6, 2011) ("Pl. Aff.").)


                              II.


     "New York Judiciary Law § 475 governs attorneys' charging
liens in federal courts sitting in New York."   <u>Itar-Tass Russian
News Agency</u>, 140 F.3d 442, 448 (2d Cir. 1998).  It provides:

> From the commencement of an action, special or other
> proceeding in any court or before any state, municipal
> or federal department, except a department of labor,
> or the service of an answer containing a counterclaim,
> the attorney who appears for a party has a lien upon
> his client's cause of action, claim or counterclaim,
> which attaches to a verdict, report, determination,
> decision, judgment or final order in his client's
> favor, and the proceeds thereof in whatever hands they
> may come; and the lien cannot be affected by any
> settlement between the parties before or after
> judgment, final order or determination.  The court
> upon the petition of the client or attorney may
> determine and enforce the lien.

N.Y. Judiciary Law § 475 (McKinney's 1997).  The charging lien
is a lien against any judgment or settlement in favor of the
client in an action in which the attorney represented the

client.  Itar-Tass, 140 F.3d at 449.  "The lien created by
Section 475 . . . is enforceable in federal courts in accordance
with its interpretation by New York courts."  Id. (internal
quotation marks omitted).  The New York Court of Appeals has
stated that the "statute is remedial in character, and hence
should be construed liberally in aid of the object sought by the
legislature, which was to furnish security to attorneys by
giving them a lien upon the subject of the action."  Fischer-
Hansen v. Brooklyn Heights R.R. Co., 66 N.E. 395, 397 (N.Y.
1903).

Where the amount of a charging lien has been fixed by
agreement, execution is generally appropriate on the judgment
for the amount agreed to by the parties, Itar-Tass, 140 F.3d at
453, subject to the limitation that, because a charging lien is
an equitable remedy, the amount of the lien must be "fair,"
Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir.
2006).  In considering whether the amount of a charging lien is
fair, a court looks to "the terms of the percentage agreement,
the nature of the litigation, difficulty of the case, time
spent, amount of money involved, results achieved and amounts
customarily charged for similar services in the same locality."
Id. (internal quotation marks omitted).  Although the court is
not bound by the parties' retainer agreement, such an agreement

- 6 -

may guide the court in determining the reasonable value of the services rendered.  See Stair v. Calhoun, 722 F. Supp. 2d 258, 268-69 (E.D.N.Y. 2010).  This determination is one which is committed to the sound discretion of the trial court.  Sequa Corp. v. GBJ Corp., 156 F.3d 136, 149 (2d Cir. 1998).

In this case, C&B requests a charging lien in the amount of $70,745.29.  C&B bases this amount on its retainer agreement with the plaintiff, which provided for a one-third contingency fee after the exhaustion of an initial retainer of $10,000, as well as charges additional to this fee for out-of-pocket disbursements such as filing costs and court fees.  (Cronin Aff. Ex. A.)  C&B explains that the one-third contingency fee equaled $69,627.35 and that the out-of-pocket disbursements equaled $1,117.94.  These amounts total to the $70,745.29 to which C&B claims it is entitled.  (Cronin Aff. at 5.)

Under the circumstances of this case, the one-third contingency fee of $69,627.35 is fair and in accordance with the reasonable value of C&B's services.  C&B has submitted contemporaneous billing records that demonstrate that Ms. Cronin expended substantial time on the case and indicate that, had the plaintiff been billed on an hourly basis, the plaintiff would have been charged in excess of the amount currently sought.  (Cronin Aff. Ex. B.)  Both the hours and the rate (generally

- 7 -

$275 for Ms. Cronin's time) that were used to calculate the
fees, if billed at an hourly rate, are reasonable.  Moreover,
the results obtained by Ms. Cronin – namely, a settlement of
$210,000 – constitute a vast improvement over the previous
settlement offer to the plaintiff, which was $35,000, according
to the transcript submitted by the plaintiff.  (Pl. Opp. to
Movant's Charging Lien Ex. C at 7, Figueroa v. City of New York,
No. 05 Civ. 9594 (S.D.N.Y. May 9, 2011).)  The $1,117.94 charged
to the plaintiff for out-of-pocket disbursements is also
reasonable.  This amount reflects many small charges for
photocopies, faxes, and postage, among other expenses.  (Cronin
Aff. Ex. B at 16-17.)  Neither the total number of these charges
nor the amount of any individual charge is excessive, and all of
the charges fall within the categories of out-of-pocket
disbursements properly chargeable to the plaintiff under the
terms of the retainer agreement.

       However, the amount of the charging lien should be reduced
to credit the $10,000 retainer the plaintiff initially paid to
C&B.  The retainer agreement provides that the plaintiff's
$10,000 retainer "shall constitute a deposit for legal fees for
representation" and that, upon the exhaustion of this retainer,
the "matter will convert to a one third contingency."  (Cronin
Aff. Ex. A.)  The "overriding criterion for determining the

amount of a charging lien is that it be 'fair.'"  Sutton, 462
F.3d at 161.  The fairest reading of the retainer agreement is
that the $10,000 was to serve as a deposit that would be
credited towards the total amount of legal fees owed by the
plaintiff; otherwise, C&B would receive both the one-third
contingency fee and the $10,000 retainer.  This reading is also
the most consistent with the language of the retainer agreement,
which describes the $10,000 retainer as a "deposit for legal
fees."  (Cronin Aff. Ex. A.)  Thus, the requested charging lien
of $70,745.29 should be reduced by $10,000 to give proper credit
to the plaintiff's initial retainer payment.

The objections raised by the plaintiff do not compel any
further reduction in the amount of the charging lien.  Most of
the plaintiff's objections merely reiterate prior arguments that
the settlement agreement was unfair and not authorized by the
plaintiff.  However, these arguments were already fully
considered and rejected by the Court in its January 31, 2011
decision granting the motion to enforce the settlement agreement
and its August 3, 2011 decision granting the motion to enforce
the charging lien, and the plaintiff has made no showing that
would justify reconsideration of these prior decisions.  The
only issue before the Court at this time is the amount of the
charging lien.

The only objections the plaintiff raises regarding the amount of the charging lien are in reference to three specific charges. First, the plaintiff contests a charge of $150 for a telephone call on April 24, 2009, which she claims cannot be legitimate because Ms. Cronin was not retained until April 27, 2009. (Pl. Aff. at 5.)  However, it is reasonable for an attorney to charge for an initial telephone call setting up an in-person meeting with a prospective client.  The plaintiff also contests charges of $687 and $275 for meetings on September 23, 2009 that the plaintiff claims did not occur. (Pl. Aff. at 5.) Even crediting the plaintiff's assertions that these meetings did not occur, this would not render the one-third contingency fee of $69,627.35 unfair or unreasonable.  If these disputed fees were subtracted, including the fee for the initial phone call, C&B would still have accrued more than the contingency fee in its representation of the plaintiff based on the total time charges expended, and the contingency fee would still be wholly fair and reasonable.  Furthermore, the contested charges do not affect the $1117.94 in out-of-pocket disbursements charged to the plaintiff.  Thus, the amount of the charging lien sought by C&B is fair and reasonable, once it is reduced by $10,000 to credit the initial retainer paid by the plaintiff.

**CONCLUSION**

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, C&B's motion for a charging lien is **granted** in the amount of $60,745.29.

**SO ORDERED.**

**Dated: New York, New York**
**November // , 2011**

John G. Koeltl
United States District Judge